**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MATTHEW RYAN BYERS, | : | CIVIL NO. 1:25-cv-00520 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

## I.  Introduction.

In this social security action, Plaintiff Matthew Ryan Byers seeks judicial

review of the final decision of the Commissioner of Social Security

("Commissioner") denying his claims for disability insurance benefits and

supplemental security income under Titles II and XVI of the Social Security Act.

We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons

---

[1] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 10 -1* to *10-7*.[2]  On September 3, 2021, Byers protectively filed[3] an application for disability insurance benefits and an application for supplemental security income, alleging that he has been disabled since April 2021. *See Admin. Tr.* at 313–328. After the Commissioner denied his claims at the initial and reconsideration levels of administrative review, *id*. at 198–207,  214–221, Byers requested an administrative hearing, *id.* at 222–23.  On April 1, 2024, Byers—who was represented by counsel—as well as a vocational expert testified at a hearing before Administrative Law Judge Brady Carter (the "ALJ"). *Id*. at 115–51.  On May 24, 2024, the ALJ denied Byers's claims for benefits. *Id*. at 8–31.  Byers appealed the ALJ's decision to the Appeals Council, which denied his request for review. *Id*. at

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Byers's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

1–7.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On March 21, 2025, Byers began this action by filing a complaint seeking review of the Commissioner's decision denying his claims. *See Doc. 1*.  He requests that the court find that he is entitled to benefits and reverse and remand for the purpose of calculating benefits, or, in the alternative, reverse and remand for further administrative proceedings. *Id*. at 1-2 (Wherefore Clause).  He also requests the court award attorney's fees and such other relief that the court deems just and proper. *Id*. at 2.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 5*.  The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 9, 10*.  The parties filed briefs, *see docs. 11–13*, and this matter is ripe for decision.

**III.  Discussion.**

Byers appealed the ALJ's denial of his claims to the Appeals Council, and he presented evidence to the Appeals Council that he had not present to the ALJ. *Admin. Tr.* at 1–7.  The Appeals Council denied Byers's request for review. *Id*. at

1.  Byers now argues that "[r]emand is required because the Appeals Council erred by failing to consider new and material evidence." *Doc. 11* at 7.  He is mistaken.

Although at the beginning of his brief, Byers asserts that the ALJ's decision was not support by substantial evidence, *Doc. 11* at 1, he makes no argument for how the ALJ's decision was not supported by substantial evidence considering the evidence that was before the ALJ.  Nor does he argue that the ALJ erred by failing to consider records that were not submitted until after his decision.  And, as explained below, there is no basis for any such argument.

Where, as here, "the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  "No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review." *Id*. at 594.  Rather, "[i]f the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision." *Id.* at 592.  And "[f]or purposes of judicial review, the 'record' is 'the evidence upon which the findings and decision complained of are based.'" *Id*. at 594 (quoting 42 U.S.C. § 405(g) (Sentence Three)).  In other words, when the Appeals Council denies review, the record "is the information that was before the ALJ, the final administrative decisionmaker . . . ." *Id*. at 594.  It is based on that record that the court determines whether the ALJ's decision is supported by substantial evidence.

4

*Id*. ("No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ.").  Thus, "[e]vidence submitted after the administrative law judge's decision cannot be used to argue that the administrative law judge's decision is not supported by substantial evidence." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 544 (M.D. Pa. 2012).  Accordingly, we reject any suggestion that the ALJ decision was not supported by substantial evidence based on evidence that was not submitted to the ALJ.

Byers argues that we should remand this case to the Commissioner because the Appeals Council erred by failing to consider the additional evidence that he presented after the ALJ's decision.  But, as explained above, we only have authority to review the final decision of the Commissioner, which when the Appeals Council denies review, is the ALJ's decision.  We do not have authority to review the Appeals Council decision to deny review. *Matthews*, 239 F.3d at 594. Thus, we reject Byers's suggestion that we should remand based on a purported error by the Appeals Council.

Although evidence not before the ALJ cannot be used to conclude that the ALJ's decision is not supported by substantial evidence, such evidence can be considered to determine whether to remand under sentence six of 42 U.S.C.

§ 405(g). *Matthews*, 239 F.3d at 592.  Sentence six of § 405(g) provides, in

pertinent part:

> The court . . . may at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a showing
> that there is new evidence which is material and that there is good
> cause for the failure to incorporate such evidence into the record in a
> prior proceeding[.]

42 U.S.C. § 405(g).  The court may remand the case to the Commissioner under

sentence six if three requirements are met: (1) the evidence is new; (2) the

evidence is material; and (3) and there is good cause for why the claimant did not

present the evidence to the ALJ. *Matthews*, 239 F.3d at 593.  "A Plaintiff seeking

[a] sentence six remand bears the burden of establishing each of these elements."

*Fegley v. Colvin*, No. 3:13-CV-01760, 2015 WL 1636045, at *3 (M.D. Pa. Apr. 8,

2015).

Here, Byers does not specifically mention sentence six of 42 U.S.C.

§ 405(g).  But he addresses the three elements necessary for such a remand. *See
doc. 11* at 7–12.  And the Commissioner construes Byers's argument as seeking a

sentence six remand. *See doc. 12* at 7–11.  So will we.

The evidence at issue here is a report of a neuropsychological examination conducted by Jacqueline Weaver, Psy.D. on June 20, 2024. *See Admin. Tr.* at 32–44.[4]  Dr. Weaver's neuropsychological examination of Byers was performed a little less than a month after the ALJ's decision of May 24, 2024.  Assuming for the sake of argument that Dr. Weaver's report meets the first two requirements—i.e., it is new and it is material—Byers is not entitled to a sentence six remand because he has not met his burden as to the third requirement—good cause for not presenting the report to the ALJ.

For a sentence six remand, there must be "good cause for the failure to incorporate [new and material] evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).  Good cause "requires some justification for the failure to acquire and present such evidence to the Secretary." *Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 834 (3d Cir. 1984) (internal citation and quotation marks omitted).  "[C]laimants should generally be afforded only one fair opportunity to demonstrate eligibility for benefits under any one set of circumstances." *Id.*  "[A] remand for 'new evidence' without requiring some justification for not having offered the evidence at the initial hearing would turn the procedure into an informal, end-run method of appealing an adverse ruling by the Secretary." *Id.*

---

[4] In addition to Dr. Weaver's report, Byers presented other evidence to the Appeals Council. *See Admin. Tr.* at 2 (Appeals Council's discussion of evidence). But in the instant action, Byers's arguments relate only to Dr. Weaver's report. Thus, we limit our discussion to Dr. Weaver's report.

And without the good-cause requirement, "[a] claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple if the [Commissioner] decides that the claimant is not disabled." *Id.* (internal citation and quotation marks omitted); *see also Matthews*, 239 F.3d at 595 ("If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand.").

Byers points out that Dr. Weaver's report did not exist at the time of the hearing before the ALJ. True. But that does not mean that Byers had good cause for not procuring such report in time to present it to the ALJ. "Claimants who delay the procurement of relevant medical evidence until after the ALJ's decision is rendered will always, perforce, be able to assert that the evidence did not previously exist simply by virtue of the fact that it was not sought." *Baker v. Barnhart*, No. 1:05CV96, 2005 WL 2847689, at *10 (W.D. Pa. Oct. 28, 2005). "If this could satisfy *Matthew's* 'good cause' standard, the policy interests outlined in that case would be subverted." *Id.* Thus, "it is a well-established principle that mere failure to obtain evidence before the ALJ made a determination when it could have been obtained does not amount to 'good cause.'" *Simonson v. Berryhill*, No. 3:16-CV-0631, 2017 WL 5632691, at *4 (M.D. Pa. Nov. 22, 2017). Thus, the fact that Dr. Weaver's report did not exist at the time of the hearing before the ALJ

8

does not show that Byers had good cause for not obtaining an examination and report in sufficient time to present such to the ALJ.

Byers also points out that prior to the ALJ hearing, he requested that the Commissioner order cognitive testing. In fact, Byers's counsel sent a letter dated February 27, 2024, to the ALJ contending the Byers "suffers from a debilitating cognitive impairment secondary to his head injury and brain bleed." *Admin. Tr.* at 814. In this letter, Byers's counsel asserts that his "concern is mimicked in his 10F CE, where the doctor states the claimant should be sent for a neurocognitive exam." *Id.* The reference to 10F is a reference to a report of a mental status evaluation by Dr. Kathleen Lederman on July 13, 2022. *Id.* at 1081–94. And, in his letter, Byers's counsel requests that the ALJ send Byers for cognitive testing. *Id.* at 814. The ALJ denied that request on February 29, 2024. *Id.* at 815.

The fact that Byers's counsel asked the ALJ to send Byers for cognitive testing does not support a conclusion that Byers had good cause for not presenting such testing to the ALJ. As the above shows, Byers was aware of Dr. Lederman's recommendation for a neurocognitive examination since July 13, 2022, and he was aware of the ALJ's denial of the request that the Commissioner order such an examination since February 29, 2024. But he did not himself schedule such an examination before the April 1, 2024 ALJ hearing. And he presented no reason why he did not do so.

We note that at the hearing before the ALJ, Byers again brought up the need for a neurocognitive examination. *Admin. Tr.* at 119–120.  The ALJ questioned the need for another consultative examination. *Id*. at 121.  And the following exchange occurred between the ALJ and Byers's counsel:

> ALJ:  Okay.  Counselor, I mean I see the contemplation of a neurocognitive disorder.  I see the previous surgery that was performed.  And we have opinions about the restrictions that would result [there] from.  I'm not really understanding what sending him to an, I mean there's not, there's no underlying basis for like a 1205.  I'm kind of missing what we don't have already before us?

> ATTY:  Okay.  If your Honor wants to proceed with what we have before us that's fine.  I just assumed that under our mutual obligation in my opinion to develop the record as honestly as we can to the fact he's a younger individual that we would want those records there.

> If at any time if he was unable to do any calculations at all and that is actually he was found to be impaired on to of the fact that he had the craniotomy with the subdural hematoma.  I mean he's got an MRI that's at 8F, page 4 from Dr. Lin who he was seeing before and his neurologist that says that there's signal and abnormalities known as bilaterally throughout his brain as well as post-surgical changes in the right frontal calvarium which in my lay opinion I would assume that he needs a cognitive exam based upon that.

> I'm just trying to protect my client, Your Honor.  If you feel like one isn't necessary I will proceed with the hearing today as such.

> ALJ:  I'll make a special note to take another look at this.  But I'm just being honest about the emails and the correspondence when I took a look at this prior that and I do understand that unfortunately that's often the nature of the consultative examinations.  Right.

> You'll send them for something and well this could be, or this might be and I, full disclosure it's going to be at least six months before we get him in front of somebody.  And I don't know that that coupled with what I already have here is going to be extra beneficial, but I'll take a look and make sure that I specifically address that in the procedural section of the decision.

*Id.* at 121–22 (errors in original).

This discussion was a clear signal that it was very unlikely that the ALJ would order additional testing or a consultative examination.  Nevertheless, Byers did not ask that the record be kept open so that he may obtain such testing or examination.[5]  This, even though Byers testified that he had an appointment with his neurologist on May 10, 2024, or May 12, 2024. *Id.* at 120–21.  Rather, Byers waited until after the ALJ's decision to be examined by Dr. Weaver.

Byers's failure to obtain a neuropsychological examination until after the ALJ's decision does not constitute good cause warranting a sentence six remand.

---

[5] We note that the ALJ stated that he would leave the record open for 14 days for other reasons, and he told counsel to let him know if additional time was needed. *See Admin. Tr.* at 119, 142.  Byers relies on *Altomare v. Barnhart*, a case where the claimant had requested that the record be kept open to obtain nerve conduction studies, but the ALJ denied that request. 394 F. Supp. 2d 678, 685–86 (E.D. Pa. 2005).  The claimant underwent nerve conduction studies the day after the ALJ's decision. *Id.* at 685.  The court concluded that upon the claimant's request, the ALJ should have kept the record open to obtain those studies. *Id.* at 686.  Accordingly, the court found that the ALJ's failure to do so established good cause for a sentence six remand. *Id.*  Here, Byers did not request that the ALJ keep the record open so that he could obtain a neuropsychological examination.  Thus, the circumstances in this case are not materially the same as the circumstances in *Altomare*.

*See Miller v. Comm'r Soc. Sec.*, 732 F. App'x 162, 166 (3d Cir. 2018) (concluding that the claimant failed to show good cause where the evidence at issue "was prepared eleven days after the ALJ's decision" and the claimant "presumably could have asked the ALJ to keep the record open for a few additional days, until after her appointment with" the doctor); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011) (concluding that claimant failed to show good cause why evidence was not procured or presented before the ALJ's decision "because she has not explained why she did not attempt to obtain [the] evaluation[s] at a time when [they] could be considered by the ALJ" (internal citations and quotation marks omitted, brackets in original)); *Lyons v. Berryhill*, No. CV 18-1106, 2019 WL 4094701, at *1 n.1 (W.D. Pa. Aug. 29, 2019) (explaining that it was the claimant's obligation "to present her best case to the ALJ, not to wait to see whether she liked his decision to decide whether to submit rebuttal evidence" and describing the claimant's decision to wait to obtain an evaluation until after the ALJ had decided her claim as "sand-bagging," which "does not constitute good cause").

Because Byers has failed to show good cause for why he did not obtain the neuropsychological examination from Dr. Weaver—or another Doctor—and present a report from such an examination prior the hearing before the ALJ, Byers is not entitled to a sentence six remand.

## IV. Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner.

An appropriate order follows.


*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge